# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-21-00318-CV
---

**In re Brie Timothy Howley**

---
### ORIGINAL PROCEEDING FROM TRAVIS COUNTY
---

## M E M O R A N D U M   O P I N I O N

Relator Brie Timothy Howley has filed this original proceeding complaining of the trial court's temporary orders requiring him to pay retroactive child support and child support above the presumptive statutory guidelines. We conditionally grant relief in part.

## BACKGROUND AND FACTUAL SUMMARY

Howley and real party in interest Sandra McGinnis were married and have three children ranging from nine to seventeen years old. In December 2019, the trial court signed an agreed divorce decree under which Howley was ordered to pay McGinnis $2,565 in monthly child support, along with $3,200 in spousal maintenance from August 2019 through January 2020, dropping to $1,600 a month until August 2024. McGinnis was also awarded at least $110,000 in cash, fifty percent of Howley's 401(k) and two IRA accounts, and all of another IRA account. The parties maintained joint ownership of the family house; McGinnis was allowed to continue living there while the children were minors; and she was made responsible for all mortgage, insurance, tax, and other payments related to the house.

In January 2021, McGinnis filed a petition to modify, seeking increased child support and spousal maintenance, retroactive to the date Howley was served or appeared. *See* Tex. Fam. Code § 156.401(b) (child support may be modified only as to obligations accruing after earlier of date of service of citation or appearance in suit to modify). Howley filed a counter-petition on February 3. The trial court held a hearing on temporary orders, and both McGinnis and Howley testified and filed documents listing their income and expenses. McGinnis's information sheet states that she seeks $6,056 in child support, along with a one-time payment of $1,500 for interim attorney's fees. She states that her monthly income is $4,165—the sums paid by Howley—and that her monthly expenses are $7,588. She also is incurring student loans, although she is not currently making payments. Howley's information sheet states that his net monthly income is $10,326.

McGinnis testified that she had returned to school in the spring of 2019, when the parties began divorce proceedings, after taking seventeen years off to raise the children. She is a full-time student, spending about fifteen to twenty hours a week on schoolwork, and has an unpaid internship requiring roughly the same time commitment. She will receive her associate's degree in May 2021, intends to transfer to a four-year university, and has a tuition waiver from the Office of Deaf and Hard of Hearing. She said that her monthly expenses vary but that she always has a deficit that averages about $3,400 a month. She explained that her mortgage payment is her largest expense, almost $3,200 a month, and that the last year had required "a lifestyle change." The children "are used to doing activities and they are not able to do those things anymore." She said that she had been "as resourceful as I can to make up for these deficits" and was "getting by" but that the children "were used to many activities and a different—a different way of living. They have adapted, but they deserve—they deserve more."

2

McGinnis was asked why she had decided not to use the money awarded to her in the divorce to address her current financial needs, and she answered:

> I haven't worked . . . for 17 years, . . . I'll be turning 49 in May and I'm starting over at kind of a disadvantage. I don't have savings or retirement. These funds will serve that, they'll serve as, you know, savings in the future for—that may go towards my future education, my children's future education, um, these are preserved for my future. . . . I disagree that I should be spending a retirement while I'm starting at age 49 all over again to enter the workforce.

On June 8, the court signed temporary orders requiring Howley to pay:

> additional child support, which shall be retroactive from March 2020 and shall continue through August 2021. This additional child support shall be the amount in the order being modified, two thousand five hundred sixty-five dollars ($2,565.00) per month, plus an additional one thousand dollars ($1,000) per month. In September 2021 and beyond, the child support shall be only the amount in the order being modified, two thousand five hundred sixty-five dollars ($2,565.00) per month.

> IT IS FURTHER ORDERED that Brie Timothy Howley shall pay a one-time retroactive payment of fifteenth thousand dollars ($15,000.00) for additional child support from March 2020 to May 2021.

The court also made the following findings of fact:

> 1. The amount of child support ordered by the Court is not in accordance with the percentage guidelines.

> 2. The net resources of Brie Timothy Howley per month are $10,326.00.

> 3. The net resources of Sandra McGinnis per month are $4,165.00.

> 4. The percentage applied to the first $9,200 of Brie Timothy Hawley's net monthly resources for child support is 30% percent. Mr. Howley should have been paying $3,097.90 per month for child support payments. However, the *Agreed Final Decree of Divorce* that was rendered on December 20, 2019 ordered Mr. Howley to pay $2,565.00 for child support payments, which was $532.90 per

3

month less than the percentage guidelines.[1]

5. The specific reasons that the amount of child support per month ordered by the Court varies from the amount computed by applying the percentage guidelines of section 154.129 of the Texas Family Code are:

a. Sandra McGinnis is a full time student, a full time mother, and is unemployed. Ms. McGinnis does not have the current means to contribute to the support of the children. Ms. McGinnis has zero income and solely relies on Brie Timothy Howley's child support payments and spousal maintenance to meet their three children's needs. The children are getting older, which means their expenses ha[ve] become higher. Mr. Howley, on the other hand, has a net resource of $10,326.00 and has the ability to contribute to the support of the children.

b. Ms. McGinnis has made good faith efforts to seek and apply for financial resources available for the support of the children. For instance, she applied for SNAP benefits and SSDI, however she was denied.

c. The amount of time of possession of and access to the children has significantly increased due to remote schooling for the children during the pandemic. Since it requires more of Ms. McGinnis' time and attention than usual, this affects Ms. McGinnis' ability to seek part time employment or other financial resources. Ms. McGinnis[] is a full time mother and her duties ha[ve] unexpectedly increased. She shall be compensated for the increased duties to take care of the children during the pandemic. Remote schooling also caused an increase in expenses since the children are home during weekdays.

## DISCUSSION

The family code provides that when a child-support obligor's monthly net resources exceed a "maximum amount of net resources to which the statutory guidelines are applicable," which is currently set at $9,200, a trial court "shall presumptively apply the

---

[1] Thirty percent of $9,200 is $2,760. Thirty percent of $10,326 is $3,097.80, and it thus appears that the court likely decided it was appropriate to award child support amounting to thirty percent of Howley's full monthly net resources. Howley concedes that the decree orders him to pay less than the statutory guidelines but insists that McGinnis should not be awarded support in excess of $2,760.

percentage guidelines to the portion of the obligor's net resources that does not exceed that amount." Tex. Fam. Code § 154.126(a). However, the court may award additional child support "as appropriate, depending on the income of the parties and the proven needs of the child." *Id.* The court is required to subtract the presumptive amount from the child's "proven total needs" and allocate the additional cost of the child's needs "according to the circumstances of the parties." *Id.* § 154.126(b). In ordering modified child support, a trial court may modify the amount ordered "only as to obligations accruing after the earlier of" the date of service of citation or the party's appearance in the modification proceeding. *Id.* § 156.401(b). A trial court has broad discretion to determine child support obligations. *See Coburn v. Moreland*, 433 S.W.3d 809, 836 (Tex. App.—Austin 2014, no pet.); *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 578 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). The "needs of the child" do not "encompass the most extravagant demands," but "the trial court is given broad discretion to determine what a child's reasonable needs are." *Coburn*, 433 S.W.3d at 836.

Howley argues that McGinnis did not present evidence of the children's needs such that the trial court could order child support beyond thirty percent of $9,200 and that the court abused its discretion in ordering retroactive child support dating to March 2020, which was before Howley was served or appeared in the suit to modify.

McGinnis testified that her only source of income was child support and spousal maintenance and that she is a full-time student, working an unpaid internship, and taking out student loans. She is the primary caretaker of the three children, although there was testimony that the older child sometimes spends more time at Howley's residence. Her monthly expenses outstrip her income by more than $3,000, and the mortgage alone takes up about three-quarters of her income. She testified that the monthly deficit causes her and the children "a lot of

5

financial stress"; that the last year had caused "a lifestyle change"; and that the children were no longer able to participate in the activities they were used to. She was almost forty-nine, had been out of the workforce for about seventeen years, had no other savings or retirement funds, and wanted to reserve the money awarded to her in the divorce for retirement or educational expenses for her and the children. The parties' income and expense statements show a wide disparity in their incomes and expenses.[2]

Given McGinnis's testimony and the exhibits offered by the parties, the trial court could have determined that McGinnis's income was insufficient to meet the children's needs and that additional child support beyond thirty percent of $9,200 was appropriate. Howley thus has not shown an abuse of discretion such that he would be entitled to extraordinary relief on that issue. *See* Tex. Fam. Code §§ 154.123 (listing factors court should consider in determining whether to apply guidelines, including children's ages and needs, parents' abilities to contribute to children's support, time of possession of and access to children, child-care expenses, and obligee's net resources), 156.402 (court may consider child-support guidelines to determine whether change of circumstances warrants modification and, if amount of ordered support does not "substantially conform" with guidelines, may modify order if modification is in child's best interest; court may "consider other relevant evidence in addition to the factors listed in the guidelines").

---

[2] McGinnis's expenses include $3,193 for her mortgage, taxes, and insurance; $600 for maintenance and repairs; a total of $465 for utilities; $500 for groceries; $60 for meals away from home; $100 for school lunches; a total of $703 for car payment, insurance, gas, and maintenance; $200 for dental and orthodontia; and $2,218 in owed credit-card debt. She does not allocate anything for clothing, entertainment, child care, or children's activities. Howley's expenses and deductions include $1,700 into his 401(k); $2,142 for rent or mortgage; a total of $318 for utilities; $813 for car-related expenses; $800 for groceries; $500 for meals away from home; $50 for school lunches; $300 for clothing; $850 for dental and orthodontia; $50 for children's activities; $100 for entertainment; and a $8,559 credit-card bill.

As to the court's ordering increased support retroactive beyond January 2021,[3] however, we find an abuse of discretion. The family code only allows support to be modified as to obligations accruing after the earlier of service of citation or a party's appearance in the suit to modify. *Id*. § 156.401(b). Thus, the court's order of support dating back to March 2020 is improper. McGinnis argues that the trial court could have ordered a lump-sum payment and that we should "reform" the order to characterize it as a lump-sum payment "reflective of the economic burden experienced by Ms. McGinnis because of the pandemic and recession." However, given that the court clearly granted additional child support dating well before January 2021, we decline to assume that the trial court would have granted the same lump-sum amount had it sought to award additional support within the proper timeframe. Further, Howley's child-support burden is increased by temporary orders, which are not appealable and which, absent mandamus relief, will remain effective pending a final judgment on the motion to modify. Thus, Howley has no adequate remedy by appeal. *See, e.g., In re Lewin*, 149 S.W.3d 727, 734 (Tex. App.—Austin 2004, orig. proceeding); *In re Winters*, No. 05-08-01486-CV, 2008 WL 5177835, at *3 (Tex. App.—Dallas Dec. 11, 2008, orig. proceeding). We therefore vacate the temporary orders and remand the matter to the trial court for entry of corrected temporary orders in light of its determination that additional support is warranted but limit the modification to the earlier date of service of citation on Howley or his appearance in the proceeding.

---

[3] As noted earlier, Howley made an appearance in the case when he filed his counterpetition on February 3, 2021. The record does not indicate when he was served, but in his petition for mandamus relief, he complains that the trial court could not have ordered increased child support any earlier than January 2021.

## CONCLUSION

The trial court did not abuse its discretion by determining that Howley should pay increased child support, but it did abuse its discretion by ordering retroactive child support earlier than the date Howley was served or appeared in the modification proceeding. We conditionally grant mandamus relief, vacate the temporary orders, and remand the matter to the trial court for new temporary orders.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Filed:   December 3, 2021