Peter Camille ULRICH, Appellant,

v.

Ellen Edna ULRICH, Appellee.

No. 01–82–0638–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 14, 1983.

James W. Girardeau, Baytown, for appellant.

Kenneth W. Brauer, Houston, for appellee.

Before DUGGAN, JACK SMITH and LEVY, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from the judgment entered in a non-jury divorce action. In three points of error, the appellant husband complains that the trial court abused its discretion in refusing to require his former wife, the appellee, to pay any sum of child support, in awarding her judgment for $15,000 damages for personal injuries, and in failing to require that she remit a portion of the personal injury judgment.

The court's decree granted a divorce, divided the community estate of the parties, granted the appellant custody of the three minor children, ages 17, 15 and 14 at the time of the decree, and set out appellee's visitation periods with the children. The decree made no requirement that appellee pay child support, and awarded her judgment against appellant for damages in the amount of $15,000 for personal injuries sustained by her during the marriage. No findings of fact or conclusions of law were requested or entered.

By his first point of error, appellant urges that the trial court abused its discretion in refusing to require appellee to pay any periodic amount of child support.

Section 4.02 of the Family Code and the Equal Rights Amendment to the Texas Constitution, Article 1, Section 3a, together impose upon each parent the duty to support his or her minor children. This does not mean that the mother and the father must contribute equally, *Hourigan v. Hourigan,* 635 S.W.2d 556, 558 (Tex.App.—

El Paso 1981, no writ); *Grandinetti v. Grandinetti,* 600 S.W.2d 371, 372 (Tex.Civ. App.—Houston [14th Dist.] 1980, no writ); *Cooper v. Cooper,* 513 S.W.2d 229, 234 (Tex. Civ.App.—Houston [1st Dist.] 1974, no writ), but each is obliged to supply money or services according to his or her ability and the needs of the children. *Grandinetti, supra.* The fact that the husband could support the children from his current earnings without an outside contribution does not relieve the wife of her obligation of support. *Hourigan, supra.* More specifically, in determining the amount of support appropriate from each parent, the trial court should consider (1) the financial resources available to each, (2) the respective obligations borne by each, (3) the non-financial contributions, and (4) the standard of living to which the children have been accustomed. Further, each case involving child support must stand on its own facts, and the trial court is clothed with broad discretion, such that its determination of how much child support is appropriate will not be disturbed absent a clear showing of abuse. *Grandinetti, supra.*

Appellant submits that under the facts and circumstances, the failure to require appellee to pay any child support is an abuse of discretion in light of the holding in *Grandinetti, supra,* wherein the trial court's failure to order child support payments by the wife resulted in reversal.

In determining whether or not the trial court abused its discretion in requiring no child support, we must first examine the *status quo* of the parties as to assets, liabilities, current income, and earning capacity following the property division in the court's decree.

It is difficult to determine accurately the value of the marital community property and the respective estates of the parties, not only because of the conflicting testimony, but also because of an absence in the record of any evidence of values of certain items.

Each party was granted one-half of the future sale proceeds of the homestead in Mont Belvieu, and appellant was awarded the use of the property until the youngest child reaches the age of eighteen, or until the court's further order. Each former spouse was also awarded one-half of appellant's retirement fund for the marital years, one-half of federal income tax refunds due, and a one-half interest in a nineteen-acre tract foreclosed upon and presently in litigation. Appellant was given most of the household furnishings, the forty-three head of cattle, all fowl, an automobile, two trucks, the tractor and mower, and the gooseneck trailer. Appellee received an automobile, an insurance policy, two cemetery lots, furniture and furnishings in her possession, a cedar chest, a cash award of $6,427, and the $15,000 personal injury judgment, apparently to be satisfied by the sale or mortgage of a portion of appellant's share of the estate.

The evidence additionally showed that appellant owned, as his separate property, the following: (1) 500 shares of stock in Crosby State Bank, valued by appellee's testimony at $150 per share, with no value listed in appellant's evidence; (2) 103 acres in Chambers County, foreclosed upon and in litigation, with no value stated; (3) a lot and cabin on the Trinity River, with no value stated; (4) 20 acres in Harris County, with no value listed; and (5) an old tractor and other farm tools inherited from appellant's father, with no value listed.

The decree also set aside to appellee, as her separate property, a color television set given to her as a birthday gift, with no value listed.

At the time of divorce, appellant was a lab technician for Diamond Shamrock Company, earning $1,380 monthly in take-home pay. Appellee was earning about $1,000 monthly in net salary, but stated an intention to attend a school in Austin to obtain training as a nursing home administrator, a job offering higher pay.

Both parties sought custody and the managing conservatorship of the three children, and agreed that whichever party was awarded custody should have the use of the homestead. Each asked for an award of child support from the other, with appellee

requesting that appellant be required to pay $200 monthly to her if she were awarded custody of one child, and $500 monthly for all three children. She testified that if she were denied custody of the children, she would be unable to pay child support because of her plan to return to school. From her $1,000 monthly net income, she testified that she was paying $500 rent and $200 on her bank loan.

Appellant relies upon *Grandinetti, supra,* as authority that the court abused its discretion in refusing to require *some* amount of child support from appellee. He urges that his reliance is enhanced by the approximate equality of his own and appellee's respective $1,380 and $1,000 monthly incomes at trial time. While he acknowledges that there is no fixed formula of support mandated either by law or the facts of this case, he urges that abuse of discretion is shown by the court's failure to require appellee to contribute any sum at all.

*Grandinetti* is distinguishable from the situation before us, despite the similar fact pattern of each father being managing conservator of three teenage children.

Both parties in *Grandinetti* appeared to have "fairly substantial" income from salaries, rentals and investments, although the appellant husband's income was "significantly higher". The court noted that the most compelling evidence of the appellee wife's "ability and willingness" to pay child support was found in her testimony, elicited by her own attorney, that she felt that 15% of her salary was a reasonable figure for her to pay on child support, and that she would *agree* to pay $150 per month. The *Grandinetti* decision held the trial court's abuse of discretion, on the facts presented, to be shown because of the "appellee's [wife's] expressed willingness and ability to assist."

In the fact situation before us, the evidence indicates that, apart from salary, additional sources of income are available to appellant from the sale of the increase of the community livestock awarded him, as well as dividends and rentals, if any, from his separate bank stock and real estate properties.

The assets awarded to appellee were, relative to appellant's properties, neither substantial nor likely to produce income. The benefit to her from the one-half interests awarded her in the homestead, appellant's pension, tax refund and foreclosed 19-acre tract are either deferred or speculative. Her attendance at school might terminate income entirely for a period of time.

It is true that appellant's ability to support the three children without aid from appellee does not relieve her of her obligation of support, but such contribution does not need to be in the form of periodic cash payments. *Hourigan, supra.* The award to appellant of the exclusive use of the homestead and escrow funds may well have been intended by the trial court to discharge, in lump sum form, appellee's duty of support. The decree's provisions for alternate weekend, summer, and Christmas visitation with the children also contemplates her support during such periods. With no findings of fact or conclusions of law in the case, we must presume that the trial court took into consideration the entire circumstances of the parties in dividing their property. *Musselwhite v. Musselwhite,* 555 S.W.2d 894, 897 (Tex.Civ.App.—Tyler 1977, writ dism'd); *Hourigan, supra,* at 557. Further, the evidence must be viewed, and all reasonable inferences drawn, in a light most favorable to appellee. *Robbins v. Robbins,* 601 S.W.2d 90, 91 (Tex.Civ.App.—Houston [1st Dist.] 1980, n.w.h.). Appellant's first point of error is overruled.

Appellant's second and third points of error contend that the trial court erred, first, in awarding, and, second, in refusing to remit as excessive, any portion of the $15,000 personal injury judgment against him. Appellant concedes that recovery for personal injuries arising out of willful and intentional torts committed by one spouse upon the other during marriage is no longer barred by the doctrine of interspousal tort immunity, *Mogford v. Mogford,* 616 S.W.2d 936 (Tex.Civ.App.—San Antonio 1981, writ ref'd, n.r.e.). However, he argues that the

evidence is insufficient to show that the injuries inflicted upon the appellee were intentional or deliberate, and that even if the evidence is sufficient, the amount awarded is excessive because no permanent injuries were shown and no future pain and suffering or loss of wages was proved.

■ While appellant has characterized the marriage as one of "give and take" with violence and abuse exchanged between himself and appellee, he admitted hitting her several times during the marriage. The principal injuries shown by appellee arose from incidents in June 1979, in which appellee suffered a broken ankle, and in June 1981, during the pendency of the divorce action, at which time she suffered a broken wrist.

As to the June 1979 incident, appellant admitted breaking appellee's ankle by twisting her foot during an argument, but he insisted that he intended only to move her foot from his path of departure, and that the fracture was an accident. Appellee testified, to the contrary, that appellant picked up her foot and deliberately twisted it.

As to the June 1981 incident, appellant testified that appellee drove up fast, jumped out of her car, and ran toward him and the woman accompanying him; that he, thinking she might have a weapon, pushed her down to protect himself; and that she apparently broke her wrist when she fell. Appellee testified, to the contrary, that appellant pulled her out of her car, popped her wrist back and shoved her to the ground. She testified that she did not know whether her wrist was broken when appellant bent her hand back or when she fell. Appellant's testimony, particularly when coupled with the accounts given of other incidents of violence during the marriage, is sufficient to support the trial court's finding of intentional and deliberate injury.

■ As to excessiveness, the trial court heard medical testimony that the broken ankle required appellee to wear a cast for two months, that she took pain medication for six weeks, and that such a fracture takes six months to heal. Concerning the broken wrist, the trial court heard medical testimony that the wrist was in a cast for two months, that the pain involved could continue from six months to a year, and that the possibility existed of future problems with arthritis in the area. Appellee testified that she lost her job as director of central services in a hospital because she could not perform her duties with a cast on her arm; that she continued to suffer daily pain as late as trial date, six months after the event; and that she had not recovered full use of the wrist. The law is well-settled, with respect to excessive verdicts, that the verdict of the trial court is to be considered in the light most favorable to the award. *Green v. Hale,* 590 S.W.2d 231, 235 (Tex.Civ.App.—Tyler 1979, n.w.h.); *Hancock Fabrics, Inc. v. Martin,* 596 S.W.2d 186, 188 (Tex.Civ.App. Houston [14th Dist.] 1980, writ ref'd n.r.e.). The trial court did not err in refusing a remittitur. Appellant's second and third points of error are overruled.

The judgment is affirmed.