NO.
12-06-00315-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

IN THE
INTEREST OF G.L.S.,      §                      APPEAL FROM THE 402ND

 

G.B.S.
AND S.J.S.,    §                      JUDICIAL DISTRICT COURT OF

 

MINOR CHILDREN            §                      WOOD COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

            Milam
Keith Smith, pro se, appeals from an order on a motion to modify child support,
visitation, and access.  Smith presents
fifteen issues.  We affirm.

 

Background

            Smith and Deborah Perry Mullen were
divorced on March 2, 2001 and are the parents of three minor children, G.L.S.,
G.B.S, and S.J.S.  In the final decree of
divorce, Mullen was appointed sole managing conservator and Smith was appointed
possessory conservator.  Smith was
granted access to the children according to the standard possession order,
along with telephone visitation one day per week.  He was also ordered to pay Mullen fifty
percent of the cost of the children’s health insurance provided through Mullen’s
employer and fifty percent of all uninsured medical expenses. Smith was not
ordered to pay child support, but he was responsible for all costs of
transportation associated with his periods of possession. 

            On April 13, 2006, Mullen filed a
motion to modify alleging that the circumstances of the parties and the
children had materially and substantially changed since the final decree of
divorce. Mullen requested child support and reimbursement for costs of health
insurance and uninsured medical expenses. 
She also asked that the standard Wednesday night visitation be changed
to Thursday and, because Smith was living in a homeless shelter, that weekend
visitation be suspended until he procured permanent housing.  Smith filed a response and counterclaim, asking
that the trial court deny Mullen’s request for child support and reimbursement
for costs of medical insurance and uninsured medical expenses.  In addition, he requested child support from
Mullen contending that his inability to secure a permanent residence was caused
by Mullen’s relocation and child support would enable him to exercise his
visitation rights.  Both parties were pro
se.

            The trial court administrator sent
both parties a notice of hearing, informing them that a hearing on Mullen’s
motion was set for July 6, 2006.  At the
conclusion of the hearing, the trial court modified Smith’s child support,
found that Smith had an earning capacity of at least $5.15 per hour, and
ordered him to pay child support in the amount of $240.00 per month beginning
July 15, 2006.  The trial court modified
Smith’s visitation with the children, changing the Wednesday visitation to
Thursday, and limiting all other visitation to between the hours of 9:00 a.m.
and 6:00 p.m. as long as Smith resided in a homeless shelter.  Further, the trial court found that Smith was
in arrears for the children’s health insurance and uninsured medical expenses
in the amount of $5,057.87, and ordered him to reduce that arrearage at the
rate of $100.00 per month beginning July 15, 2006.  The trial court administrator sent both
parties a notice of hearing, informing them that a hearing on entry of the
order was set for August 11, 2006.  After
that hearing, the trial court signed the order on the motion to modify.  On August 24, 2006, Smith requested the trial
court file findings of fact and conclusions of law.  However, the trial court did not do so.  This appeal followed.

 

Findings of Fact and Conclusions of Law

            In his fourteenth issue,[1]
Smith requests that we hold the trial court’s failure to file findings of facts
and conclusions of law was “a hostile act.” 
We interpret this request as a contention that the trial court’s failure
to file findings and conclusions was error. 
Smith requested findings of fact and conclusions of law pursuant to Rule
296 of the Texas Rules of Civil Procedure. 
Rule 297 provides, in part, that if the court fails to file timely
findings of fact and conclusions of law, the party making the request shall,
within thirty days after filing the original request, file a notice of past due
findings of fact and conclusions of law. 
Tex. R. Civ. P. 297.  Smith did not file the notice required by
Rule 297.

            The failure to file a notice of past
due findings of fact and conclusions of law waives the right to complain about
the trial court’s failure to file findings of fact and conclusions of law.  Gaxiola v. Garcia, 169 S.W.3d 426, 429
(Tex. App.–El Paso 2005, no pet.). 
Because Smith did not file the notice required by Rule 297, he has
waived his complaint regarding the trial court’s failure to file findings of
fact and conclusions of law.  See Tex. R. Civ. P. 297; Gaxiola,
169 S.W.3d at 429.  We overrule Smith’s
fourteenth issue.

 

Failure to Provide Financial Information

            In his first issue, Smith argues
that the trial court erred in allowing the hearing on Mullen’s motion to modify
to move forward because she failed to provide the financial documents required
by section 154.063 of the Texas Family Code.[2]  Section 154.063 of the Texas Family Code
requires a party to furnish information sufficient to accurately identify that
party’s net resources and ability to pay child support and to produce copies of
income tax returns for the past two years, a financial statement, and current
pay stubs.  Tex. Fam. Code Ann. § 154.063 (Vernon 2002).  As a prerequisite to presenting a complaint
for appellate review, the record must show that a complaint was made to the
trial court by a timely request, objection, or motion that stated the grounds
for the ruling that the complaining party sought from the trial court with
sufficient specificity to make the trial court aware of the complaint.  Tex.
R. App. P. 33.1(a)(1)(A).  At
trial, Smith did not object to Mullen’s failure to produce these
documents.  Thus, Smith has waived this
complaint.  We overrule Smith’s first
issue.

 

Notice of Hearing

            In his second issue, Smith argues
that the trial court erred in allowing the hearing on Mullen’s motion to modify
to move forward because the notice of hearing was given by the trial court, not
Mullen.  He contends that according to
rules 21 and 21a of the Texas Rules of Civil Procedure, the burden of service
is on the parties, not the trial court, and that proof of service is
required.  Because the court
administrator gave notice of the hearing, Smith argues that the trial court
acted as a party to the suit, is in breach of trust, and may have violated
judicial ethics.  He also contends that
the notice of hearing for entry of the order on the motion to modify was given
by the trial court, not Mullen.

            Rule 21 of the Texas Rules of Civil
Procedure states that an application to the court for an order and notice of
any hearing thereon, not presented during a hearing or trial, shall be served
upon all other parties not less than three days before the time specified for
the hearing unless otherwise provided by the rules of procedure or shortened by
the court.  Tex. R. Civ. P. 21.  However, the court may set contested cases
for final hearing on its own motion.  Tex. R. Civ. P. 245.  Because the hearing on Mullen’s motion to
modify was a final hearing, Rule 245 applies. Thus, the trial court was
authorized to send the notice of hearing on Mullen’s motion.  See id.

            Smith also complains that the trial
court administrator, and not Mullen, sent a notice of hearing for entry of the
order on Mullen’s motion to modify. Smith did not object to the notice.  See Tex.
R. App. P. 33.1(a)(1)(A).  Thus,
Smith has waived his complaint regarding the notice of hearing for entry of the
order.  We overrule Smith’s second issue.

 

Exclusion of Evidence

            In his third issue, Smith argues
that the trial court erred by improperly excluding a document from the State of
Washington concerning a child protective services case.  In his fourth issue, Smith argues that the
trial court improperly excluded a copy of the record of the hearing in the
parties’ divorce that was the basis for the court’s final decree of divorce.

Applicable
Law








            We review a trial court’s
evidentiary rulings for an abuse of discretion. 
See Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d
35, 43 (Tex. 1998).  A trial court abuses
its discretion when it rules without regard for any guiding rules or
principles.  Id.  Error may be predicated on a ruling that
excludes a party’s evidence only if the substance of the evidence was made
known to the trial court by offer of proof. 
Tex. R. Evid. 103(a)(2); Smith
v. Smith, 143 S.W.3d 206, 211 (Tex. App.–Waco 2004, no pet.); Jones
v. Lurie, 32 S.W.3d 737, 745 (Tex. App.–Houston [14th Dist.] 2000, no
pet.).  An offer of proof is sufficient
if it apprised the court of the substance of the testimony and may be presented
in the form of a concise statement.  Smith,
143 S.W.3d at 211. Excluded evidence also may be preserved for appellate review
by a posttrial bill of exception.  Id.
When the substance of the evidence is apparent from the record, a formal offer
of proof may not be necessary.  Tex. R. Evid. 103(a)(2); Smith,
143 S.W.3d at 211.  When a trial court
excludes evidence, a failure to make an offer of proof waives any complaint
about the exclusion on appeal. Jones, 32 S.W.3d at 745.

Analysis

            At trial, while cross examining
Mullen’s current spouse, Larry, Smith attempted to introduce into evidence a
letter dated June 7, 2005 from the State of Washington concerning a child
protective services case filed in 2005. 
Mullen objected, stating that the letter was irrelevant to child support
or visitation and access.  Smith responded,
stating that Mullen had asked Larry Mullen questions regarding child protective
services.  The trial court sustained the
objection.  Smith did not apprise the
trial court of the substance of the letter, nor is the substance of the letter
apparent from the record. See Tex.
R. Evid. 103(a)(2); Smith, 143 S.W.3d at 211.  Because Smith failed to make an offer of
proof, he has waived this issue. 
Accordingly, we overrule Smith’s third issue.

            During Smith’s testimony, he
attempted to introduce a copy of the record of the court’s ruling in the
parties’ divorce.  Mullen objected,
stating that the document was irrelevant. 
The trial court examined the document and sustained the objection,
stating that the decree of divorce had been entered and that “whatever the
judge said at the time” meant nothing. 
The substance of the document is not apparent from the record.  See Tex.
R. Evid. 103(a)(2); Smith, 143 S.W.3d at 211. Because
Smith failed to make an offer of proof, he has waived this issue.  Smith attached a copy of the prior record to
his brief.  However, we cannot consider
documents attached to an appellate brief that do not appear in the record.  Till v. Thomas, 10 S.W.3d 730,
733 (Tex. App.–Houston [1st Dist.] 1999, no pet.).  We must determine a case on the record as
filed, and may not consider documents attached as exhibits to briefs.  Id.  Accordingly, we overrule Smith’s fourth
issue.

 

 

Modification of Child Support

            In his fifth, sixth, and thirteenth
issues, Smith argues that the trial court erred in assessing child support that
prohibited him from exercising possession, that rendered him unable to secure
adequate housing for himself or his children, and that did not consider the
best interests of the children.  Further,
Smith contends that Mullen failed to show that the circumstances of the
children or persons affected by the final decree of divorce have materially and
substantially changed.

Standard
of Review

            A court’s order of child support
will not be disturbed on appeal unless the complaining party can show a clear
abuse of discretion.  Worford v.
Stamper, 801 S.W.2d 108, 109 (Tex. 1990); In re L.R.P.,
98 S.W.3d 312, 313 (Tex. App.–Houston [1st Dist.] 2003, pet. dism’d).  The test for abuse of discretion is whether
the trial court acted without reference to any governing rules or
principles.  Worford, 801
S.W.2d at 109; In re L.R.P., 98 S.W.3d at 313.  In other words, the issue is whether the
trial court’s actions were arbitrary or unreasonable.  Worford, 801 S.W.2d at 109; In
re L.R.P., 98 S.W.3d at 313. 

            Under the abuse of discretion
standard, legal and factual insufficiency are not independent reversible
grounds, but are relevant components in assessing whether the trial court
abused its discretion.  In re
L.R.P., 98 S.W.3d at 313; Farish v. Farish, 921 S.W.2d
538, 542 (Tex. App.–Beaumont 1996, no writ). In making this determination, the
reviewing court must view the evidence in the light most favorable to the
actions of the trial court and indulge every legal presumption in favor of the
judgment.  Nordstrom v. Nordstrom,
965 S.W.2d 575, 578 (Tex. App.–Houston [1st Dist.] 1997, pet. denied); In
re S.B.C., 952 S.W.2d 15, 17-18 (Tex. App.–San Antonio 1997, no
writ).  If there is some evidence of a
substantive and probative character to support the judgment, the trial court
did not abuse its discretion.  Nordstrom, 965 S.W.2d at 578; In
re S.B.C., 952 S.W.2d at 18.

Applicable
Law

            A trial court may order either or
both parents to support their children.  Tex. Fam. Code § 154.001 (Vernon
Supp. 2006).  Each parent has the duty to
support his or her minor children.  Hourigan
v. Hourigan, 635 S.W.2d 556, 558 (Tex. Civ. App.–El Paso 1981, no
writ).  A trial court may modify a child
support order if the circumstances of the child or a person affected by the
order have materially and substantially changed since the date of the order’s
rendition.  Tex. Fam. Code § 156.401(a)(1) (Vernon Supp. 2006).  Further, a child support order may be
modified if it has been three years since the order was rendered or last
modified and the monthly amount of the child support award differs by either twenty
percent or $100 from the amount that would be awarded in accordance with child
support guidelines.  Id. §
156.401(a)(2).

            In determining whether the
circumstances of the child or a person affected by the order have materially
and substantially changed, evidence regarding the parents’ or child’s financial
circumstances and needs at the time of divorce and the time of modification
should be considered by the trial court. 
Farish, 921 S.W.2d at 541; In re Striegler,
915 S.W.2d 629, 635 (Tex. App.–Amarillo 1996, writ denied). A parent who is
qualified to obtain gainful employment cannot avoid his or her support
obligations by voluntarily remaining unemployed.  In re Striegler, 915 S.W.2d at
638.  If the actual income of the obligor
is significantly less than what the obligor could earn because of intentional
unemployment, the court may apply the support guidelines to the earning
potential of the obligor. See Tex.
Fam. Code Ann. § 154.066 (Vernon 2002). 
The amount of a child support order established by the child support
guidelines is presumed to be reasonable and an order of support conforming to
the guidelines is presumed to be in the best interest of the child.  Tex.
Fam. Code Ann. § 154.122 (a) (Vernon 2002).  

Analysis

            At trial, Smith acknowledged that he
had never been ordered to pay child support. 
He was living at the Salvation Army Center in Tyler, Texas and was
unemployed.  Smith stated that he
received a thirty percent disability from the Veteran’s Administration (“VA”)
because of a service related knee injury in 1977.  According to Smith, he previously had five
operations on his knees, including a left knee replacement.  He received approximately $404.00 a month in
disability benefits, which included an amount for his three children.  He also received a living stipend of
approximately $760.00 a month under the VA’s vocational rehabilitation
program.  In total, his monthly income
was approximately $1,170.00. In order to receive the full amount of benefits
from the VA, he had to be enrolled in school full time according to the VA’s
vocational rehabilitation program requirements. 
Smith stated that he was a full time college student, taking three to
four classes a semester.  The VA paid his
tuition.  He stated that he intended to
obtain a degree and teaching certificate, and that the VA’s vocational program
allowed him forty-eight months to complete his degree.  Smith also stated that he received a
settlement from the VA in 2005, but did not know the amount he received. 

            Smith paid between $210.00 and $260.00
a month for rent to the Salvation Army. 
After paying rent, he had approximately $900.00 a month in disposable
income.  In order to obtain an apartment
for himself and the children, he would need approximately $500.00 to $600.00,
plus a deposit.  He stated that he did
not have the money to look for a residence until September 2006.  Smith said he was unable to pay child support
because he was trying to go to college and he could not work while attending
college full time.  According to Smith, “any
payment at this time [was] beyond [his] ability to pay because [he could] not
save up money to get a place” to live. 
Smith stated that he had limited time for part time employment because
he was required to maintain a certain grade point average.  He also stated that if he got a job, he would
have to give up the opportunity to obtain a degree and be a teacher.  He admitted that his disability from the VA
did not prevent him from working and that he could “do something.”  However, Smith stated that he could work only
for a time before his condition would worsen. 
He stated that he could not pass a physical examination for employment
and that both knees were unstable. He testified that the pain was virtually
gone, but he suffered discomfort depending on the amount of time he spent
standing, lifting, or walking. 

            Mullen requested that the trial
court base Smith’s child support on his VA benefit plus the amount of a forty
hour work week at minimum wage.  The
trial court modified Smith’s child support, found that Smith had the capacity
to earn at least $5.15 per hour, and ordered him to pay child support in the
amount of $240.00 per month. 

            We must first determine whether
there has been a material and substantial change in the circumstances of the
children or persons affected by the final decree of divorce.  See Tex.
Fam. Code § 156.401(a)(1). 
The date of the final decree of divorce was March 2, 2001, more than
three years before Mullen filed the motion to modify in April 2006. Further,
Smith was not ordered to pay any child support at that time.  Because more than three years had passed
since the final decree of divorce and the monthly amount of child support
differed by either twenty percent or $100 from the amount that would be awarded
in accordance with child support guidelines, we conclude that there was a
material and substantial change in the circumstances of the children or persons
affected by the final decree of divorce.  See id. § 156.401(a)(1),
(2).

            Although Smith complains about being
ordered to pay child support, he has a duty to support his minor children.  See Hourigan, 635 S.W.2d at
558.  Smith admitted that he had
approximately $900.00 in disposable income after paying rent and that he “could”
find employment even if he could not work to his full ability.  Smith stated that he could not work, attend
college full time, and save for an apartment. 
However, if he is qualified to obtain gainful employment, Smith cannot
avoid his support obligations by voluntarily remaining unemployed.  See In re Striegler, 915
S.W.2d at 638.  Although Smith disputed
that he could work, the trial court, as fact finder in a bench trial, is the
sole judge of the credibility of the witnesses. 
Sw. Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex.
App.–Houston [1st Dist.] 1992, writ denied). 
As fact finder, the court may take into consideration all of the facts
and surrounding circumstances in connection with the testimony of each witness
and accept or reject all or any part of that testimony.  Id.  The trial court could have disbelieved Smith’s
testimony, and believed that he could obtain some employment, even while
attending college.  Because Smith
testified that he could obtain employment and had $900.00 in disposable income
even while not working, there was sufficient evidence to support the judgment
and the trial court did not abuse its discretion in ordering child
support.  See Nordstom, 965
S.W.2d at 578; In re S.B.C, 952 S.W.2d at 18.

            Smith also argues that the trial
court did not consider the best interests of the child.  Under the Texas Family Code, the net monthly
income of an employed person earning the federal minimum wage of $5.15 per hour
is $805.53.  See Tex. Fam. Code Ann. § 154.061 (Vernon
Supp. 2006). According to the child support guidelines, the amount of child
support for three children should be thirty percent of Smith’s net monthly
resources or, based on the federal minimum wage of $5.15 per hour, $240.00 per
month.  See id. §
154.125 (Vernon 2002).  Thus, Smith’s
child support was within the Texas Family Law guidelines and, therefore,
presumed to be in the best interest of the children. See id.
§ 154.122 (a).  Moreover, the trial court
found that its order was in the best interest of the children.  Although Smith had the burden to overcome the
statutory presumption, he did not demonstrate how the child support order was
not in the best interest of the children. 
Because Smith did not rebut the presumption that the order was in the
children’s best interest, we conclude that the trial court did not abuse its
discretion in ordering child support within the Texas Family Law guidelines,
and that this order was in the children’s best interest.  Accordingly, we overrule Smith’s fifth,
sixth, and thirteenth issues.

 

Medical and Insurance Arrearages

            In his seventh issue, Smith argues
that the trial court erred in assessing arrearages for uninsured medical
expenses and health insurance payments. 
He contends that Mullen failed to furnish proof that she provided him
with uninsured medical expenses within ten days and failed to provide him with
an insurance policy.

            We review a trial court’s
confirmation of arrrearages for uninsured medical expenses and health insurance
payments under an abuse of discretion standard. 
Beck v. Walker, 154 S.W.3d 895, 901 (Tex. App.–Dallas
2005, no pet.).  At trial, Smith
testified that he had not received a copy of the children’s insurance policy
and had not been notified within ten days of any uninsured medical
expenses.  The trial court admitted a
letter dated June 24, 2002 into evidence in which Mullen asked Smith “for
medical insurance and unpaid medical arrearages.”  Smith conceded that he received a similar
letter.  Mullen testified that she did
not send him receipts of uninsured medical expenses within ten days because she
did not have his address for many years and he was homeless.  However, she stated that she frequently hand
delivered the receipts.  Further, she
stated that she gave him insurance cards during a hearing in 2000.  The trial court found that Smith was in
arrears on health insurance payments and reimbursement of uninsured medical
costs in the amount of $5,057.87.  He was
ordered to reduce the arrearage in the amount of $100.00 per month beginning
July 15, 2006.








            Smith asserts here that he always
provided notice of his address and refers to an exhibit attached to his brief,
but  the reporter’s record of the
hearings does not include the exhibits 
that were admitted into evidence. 
We cannot consider documents attached to an appellate brief that do not
appear in the record.  Till,
10 S.W.3d at 733.  Smith also disputes
that he received proper notice of uninsured medical expenses or the insurance
cards.  In a bench trial, however, the
trial court, as fact finder, is the sole judge of the credibility of the
witnesses.  Sw. Bell Media, Inc.,
825 S.W.2d at 493.  The trial court could
have believed Mullen’s testimony that she hand delivered most of her receipts
of uninsured medical expenses and insurance cards, and disbelieved Smith’s
testimony to the contrary.  Because there
was some evidence that Mullen gave Smith copies of uninsured medical expenses
and insurance cards, the trial court did not abuse its discretion in assessing
arrearages.  See Nordstom,
965 S.W.2d at 578; In re S.B.C, 952 S.W.2d at 18.

            Additionally, Smith argues that new
evidence shows Mullen does not currently notify him of uninsured medical costs
within ten days and  refers to an exhibit
attached to his brief.  He also argues
that new evidence shows Mullen misrepresented the amount of arrearages for
health insurance payments.  The jurisdiction
of this court is, except where otherwise specially provided, appellate
only.  Tex.
Gov’t Code Ann. § 22.220(a) (Vernon 2004); see also Thorp Springs
Christian College v. Dabney, 37 S.W.2d 193, 196 (Tex. Civ. App.–Fort
Worth 1931, no writ).  The scope of our
appellate jurisdiction is limited to review of decisions by a lower court.  See United Am. Ins. Co. v. McPhail,
435 S.W.2d 624, 625-26 (Tex. Civ. App.–Tyler 1968, no writ); see also Walker
v. Koger, 131 S.W.2d 1074, 1075 (Tex. Civ. App.–Eastland 1939, writ
dism’d) (stating that the subject matter of an assignment of error is some
ruling or action of the court).  Here,
Smith complains of Mullen’s failure to comply with the trial court’s final
order, not a decision of the trial court. 
Because we can review only decisions of a lower court, we do not address
these arguments. 

            Finally, Smith contends that the
trial court refused to let him question Mullen regarding a 2003 hearing in the
State of Washington during which she requested medical arrearages.  We cannot locate in the reporter’s record
Smith’s request to question Mullen about this hearing or the trial court’s
refusal to allow it.  Moreover, Smith
does not cite the portion of the record where the trial court refused to let
him question Mullen regarding the 2003 hearing. 
Therefore, Smith has presented nothing for our review.

            We overrule Smith’s seventh issue.

 

Withholding from Earnings

            In his eighth issue, Smith argues
that the trial court erred in giving undue authority to the Attorney General of
Texas to attach his earnings and order contempt that violated his rights of due
process and equal treatment under the Fourteenth Amendment to the United States
Constitution. Smith further argues that the child support ordered by the trial
court immediately placed him in noncompliance and contempt and, therefore, an
attorney should have been appointed for him by the trial court.

Applicable
Law

            Section 158.001 of the Texas Family
Code states that in a proceeding in which periodic payments of child support are
ordered, modified, or enforced, the court shall order that income be withheld
from the disposable earnings of the obligor. 
Tex. Fam. Code Ann. §
158.001 (Vernon 2002).  However, section
158.002 of the Texas Family Code states that a court may provide, for good
cause shown or on agreement of the parties, that the order withholding income
need not be issued or delivered to an employer until (1) the obligor has been
in arrears for an amount due for more than thirty days; (2) the amount of
the arrearages is an amount equal to or greater than the amount due for a one
month period; or (3) any other violation of the child support order has
occurred.  Id. § 158.002
(Vernon 2002).  Moreover, section 158.104
states that a request for issuance of an order of withholding may be filed with
the clerk of the court by the prosecuting attorney, the Title IV-D agency (the
Attorney General), the friend of the court, a domestic relations office, the
obligor, the obligee, or an attorney representing the obligee or obligor.  Id. §§ 158.104, 231.001 (Vernon
2002). 

Analysis

            The trial court’s order on the
motion to modify provides that if Smith was delinquent or violated the child
support order, Smith’s employer would “be ordered to withhold from earnings for
child support from [Smith’s] disposable earnings.”  All child support payments would then be made
pursuant to that order.  The trial court
stated that it had signed an employer’s order to withhold earnings for child
support.  On request by the prosecuting
attorney, the attorney general, Mullen, or Smith, a certified copy of that
order would be delivered to Smith’s employer. 
The trial court had no discretion in ordering withholding of Smith’s
earnings.  See id. §
158.001 (“The court . . . shall order that income be withheld. . . .”)
(emphasis added).  Further, the order to
withhold earnings would not take effect until Smith was delinquent or violated
the child support order, and the order on the motion to modify correctly
identified those parties or agencies who were allowed to request an issuance of
an order of withholding.  See id.
§§ 158.002, 158.104, 231.001.  Thus, the
trial court did not err in ordering withholding of Smith’s earnings if he
became delinquent or violated the child support order.

            We cannot find any language in the
order on the motion to modify stating that Smith would be in contempt or “immediate”
contempt from this order without due process of law.  Further, the clerk’s record does not contain
the employer’s order to withhold earnings. 
Thus, we cannot determine whether the order contained an order of
contempt without due process.  The burden
is on the complaining party to present a sufficient record to the appellate
court to show error requiring reversal.  Aguero
v. Aguero, 225 S.W.3d 236, 238 (Tex. App.–El Paso 2006, no pet.).  Because Smith has not presented a record
sufficient to show that the trial court ordered contempt without due process in
its employer’s order to withhold earnings, he has waived this complaint.  Accordingly, we overrule Smith’s eighth
issue.

 

Constitutional Issues

            In his ninth issue, Smith asserts
that the trial court erred in following Texas Family Code guidelines that
violated his rights of due process and equal treatment under the Fourteenth
Amendment to the United States Constitution. 
He also contends that the trial court erred in following Texas Family
Code guidelines that violated “prior Supreme Court Rulings,” specifically
sections 154.062 and 154.181 of the Texas Family Code.  Other than parenthetical citations to two
sections of the family code, Smith cites no case authority and provides no
analysis as to how the trial court erred in following the family code
guidelines.  Rule 38.1(h) of the Texas
Rules of Appellate Procedure provides that a brief must contain a clear and concise
argument for the contentions made, with appropriate citations to authorities
and to the record.  Tex. R. App. P. 38.1(h).  Failure to cite applicable authority or
provide substantive analysis waives an issue on appeal.  Huey v. Huey, 200 S.W.3d 851, 854
(Tex. App.–Dallas 2006, no pet.). 
Because Smith does not cite to authorities and offers no analysis, he
has waived his complaint regarding the trial court’s following the cited Texas
Family Code guidelines.  Accordingly, we
overrule Smith’s ninth issue.

            In his tenth issue, Smith argues
that the trial court erred in conducting the hearing with a lack of
impartiality, as an indifferent juror, or in a manner favorable  to one party, and/or acted as a client for
one party or the state, or acted in a manner that violated his rights under
Articles 1 and 3a of the Texas Constitution.[3]  More specifically, Smith contends that he was
served a notice of hearing by the trial court and that the trial court excluded
evidence that unduly protected a witness for Mullen. We have already held that
the trial court did not err in serving Smith with a notice of hearing or in
excluding the evidence Smith refers to. 
Accordingly, we overrule Smith’s tenth issue.

 

Supreme Court Rulings

            In his eleventh issue, Smith argues
that the trial court erred by using the parties’ ignorance of the law as an
excuse for not seeking justice and diligently exercising “due process of
procedure” to discover the facts of the case in violation of rulings by the
United States Supreme Court.  He contends
that prior rulings deemed it appropriate for a court to “guide procedure
presented by Pro Se parties to best serve justice.”  Smith cites no case authority and offers no
analysis relating to how the trial court erred. 
Because Smith does not cite to authorities or the record and offers no
analysis, he has waived his complaint regarding the trial court’s alleged
violation of Supreme Court rulings.  See
Tex. R. App. P. 38.1(h); Huey,
200 S.W.3d at 854.  Accordingly, we
overrule Smith’s eleventh issue.

 

Judicial Bias

            In his twelfth issue, Smith contends
that the trial court violated judicial canons 2(B); 3(B), subsections (4) and
(8); and 6(C), subsections (1)(a) and (2). 
He argues that the trial court failed to properly hear his case by
preparing orders beneficial to Mullen, threatened him with contempt when he
protested, and intimidated him throughout the hearings, making it impossible
for him to present his evidence in full. 
As a result, Smith contends that certain evidence was not presented to
the trial court. 

Applicable
Law

            Due process requires a neutral and
detached hearing body or officer.  Earley
v. State, 855 S.W.2d 260, 262 (Tex. App.–Corpus Christi 1993), writ
dism'd, improvidently granted, 872 S.W.2d 758 (Tex. Crim. App.1994) (citing
Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S. Ct. 1756, 1761, 36
L. Ed. 2d 656 (1973)).  In the absence of
a clear showing to the contrary, we will presume the trial court was a neutral
and detached officer.  Id.
(citing Fielding v. State, 719 S.W.2d 361, 366 (Tex. App.–Dallas
1986, pet. ref'd)).  The complaining
party must show the judge acted improperly and that the party suffered probable
prejudice as a result.  Rymer v.
Lewis, 206 S.W.3d 732, 735-36 (Tex. App.–Dallas 2006, no pet.).  In conducting our review, we examine the
entire record.  Id. at 736.


            Judicial rulings alone almost never
constitute a valid basis for a bias or impartiality motion. Liteky v.
United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d
474 (1994).  Bias must come from an
extrajudicial source and result in an opinion on the merits of the case other
than what the trial court learned from participation in the case.  See In re K.L.R., 162 S.W.3d
291, 312 (Tex. App.–Tyler 2005, no pet.). 
A trial court has the inherent power to control the disposition of
cases.  Dow Chem. Co. v. Francis,
46 S.W.3d 237, 240 (Tex. 2001).

            Canon 2(B) states that a judge shall
not allow any relationship to influence judicial conduct or judgment or lend
the prestige of judicial office to advance the private interests of the judge
or others.  Tex. Code Jud. Conduct, Canon 2(B), reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. G
app. B (Vernon 2005). Canon 3(B)(4) states that a judge should be patient,
dignified, and courteous to litigants and others with whom the judge deals in
an official capacity.  Tex. Code Jud. Conduct, Canon 3(B)(4), reprinted
in Tex. Gov’t Code Ann., tit.
2, subtit. G app. B (Vernon 2005).  Canon
3(B)(8) provides that a judge shall accord to every person who has a legal
interest in a proceeding, or that person’s lawyer, the right to be heard
according to law.  Tex. Code Jud. Conduct, Canon 3(B)(8), reprinted
in Tex. Gov’t Code Ann., tit.
2, subtit. G app. B (Vernon 2005).[4]

Analysis

            We review the entire record in
determining whether the trial court was fair and impartial.  See Rymer, 206 S.W.3d at
736.  Regarding canon 2(B), Smith appears
to argue the trial court prepared orders beneficial to Mullen “prior to rest.”
In liberally interpreting Smith’s argument, we conclude that he is referring to
the order on the motion to modify to which he objected. At a hearing on the
order, Smith objected to a number of paragraphs and provisions in the order,
and the trial court overruled all but one objection.  Regarding canon 3(B), subsections (4) and
(8), Smith contends that the trial court intimidated him, threatened him with
contempt, and allowed Mullen to present hearsay without proof.

            The record demonstrates that contrary
to Smith’s assertions of bias and intimidation, the trial court was patient,
attentive, and professional.  We cannot
find any examples of intimidation or threats to hold Smith in contempt.  Even though Smith complains that the trial
court violated judicial canon 2(B), he does not specify in what manner this
canon was violated.  Further, Smith does
not identify any extrajudicial source that influenced the trial court’s
decision nor has he directed us to any evidence in the record from which we
might conclude any such influence existed.  See In re K.L.R., 162 S.W.3d at
312.  Thus, in substance, he complains
only of actions taken by the trial court while acting in its judicial capacity
at trial.  Based upon our review of the
record, we conclude that Smith has failed to make a clear showing that the
trial court was biased, intimidating, or threatening and, therefore, we must
presume that the trial court was a neutral and detached officer.  See Earley, 855 S.W.2d
at 262.  We overrule Smith’s twelfth
issue.

 

Visitation

            In his fifteenth issue, Smith argues
that the trial court erred in changing when he must designate whether he
intended to pick up the children from school on his midweek visitation.  Smith contends that the changed provision was
not presented or heard during the hearing, that the trial court specifically
stated that anything not mentioned would not be modified from the original
decree, and, thus, this provision should be stricken from the order.  The standard possession order in the final
decree includes only one reference to a twenty-four hour notice.  Specifically, a handwritten addition to the
order provides that “for all periods of visitation [where the] parties reside
less than 100 miles apart, Mr. Smith shall have the right to pick up the children
from their school, provided Mr. Smith gives [Mullen] verbal or written notice
24 hours in advance of each period of possession.”

            The proposed order on the motion to
modify stated that if Smith gives Mullen “written notice prior to the beginning
of the school year, [Smith] shall have the right to pick up the children from
school on Thursdays that school is in session, at the time that school is
dismissed for that day, and return [the] children to the home of [Mullen] at
8:00 [p.m.] that night.”  After Smith
objected to this language at the hearing, the trial court added a handwritten
provision to the order to alleviate Smith’s concern that he might not be able
to anticipate when he could exercise midweek visitation. The additional
language provided that “all visitation from school [was] cancelled unless
[Smith] gives prior notice at least twenty-four hours in advance.”

            The handwritten addition in the
original divorce decree did not specifically reference the midweek visitation
and applied to “all periods of visitation.” 
The handwritten provision in the order on the motion to modify relates
only to the visitation from school but does not change the amount of notice
required.  In our view, this does not
significantly change the original order. 
Therefore, we cannot conclude that the trial court erred by including
the challenged provision in the motion to modify.  Accordingly, we overrule Smith’s fifteenth
issue.

 

Disposition

            The judgment of the trial court is affirmed.  Mullen’s motion for sanctions is overruled.

 

 

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

 

Opinion delivered October 24,
2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











[1] We have liberally construed Smith’s brief in order to give effect to
his arguments, see Tex. R. App.
P. 38.9, and have determined that he has raised fifteen issues.





[2] This issue relates to Smith’s counterclaim for child support from
Mullen.





[3] We interpret this as a reference to sections 1 and 3a of article I of
the Texas Constitution.  Neither section
pertains to trials or the lack of impartiality of a trial court.





[4] Smith also cites canon 6(C), subsections (1)(a) and (2).  This canon pertains to justices of the peace
and municipal court judges.  See Tex. Code Jud. Conduct, Canon
6(C)(1)(a), (2), reprinted in Tex.
Gov’t Code Ann., tit. 2, subtit. G app. B (Vernon 2005).  The trial judge in this case was a district
judge.  Therefore, this canon does not
apply.